NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-2580
No. 08-3681
No. 08-4575

UNITED STATES OF AMERICA

v.

FELIX ORTIZ-GARCIA,
ENRIQUE RAMOS-SANCHEZ,
CAESAR HERNANDEZ,

Appellants

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-07-cr-103-004)
(D.C. No. 1-07-cr-103-003)
(D.C. No. 1-07-cr-103-002)

District Judge: Honorable John E. Jones III

Submitted under Third Circuit L.A.R. 34.1(a)
on November 17, 2009

Before: AMBRO, ALDISERT and ROTH, Circuit Judges
(Opinion Filed: June 8, 2010)

OPINION OF THE COURT

ALDISERT, Circuit Judge.

Defendant-Appellants Felix Ortiz-Garcia, Enrique Ramos-Sanchez and Caesar Hernandez appeal from judgments of conviction entered and sentences imposed by the District Court for the Middle District of Pennsylvania.[1] After each appellant's arrest on drug-related charges, each pled guilty pursuant to a written plea agreement with the United States Government, each was sentenced by the Honorable John E. Jones III, and each appealed. Subsequently, counsel for Ortiz-Garcia and counsel for Hernandez moved to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967), each asserting that no nonfrivolous argument can be made in this Court. Appointed counsel for Ramos-Sanchez has filed a brief on the merits.

For the reasons that follow, we will affirm.

I.

On February 6, 2007, Justin Raudebaugh died from ingesting heroin laced with fentanyl, a synthetic opioid approximately 100 times more potent than heroin. On February 15, 2007, Kristin Podolski died from ingesting the same. Each victim was found with individual heroin packages stamped "Devil's Reject," and an investigation ensued.

Government agents learned from two sources that Ortiz-Garcia, known as "Andy," was selling heroin from his residence in Harrisburg. Thereafter, a confidential informant

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

purchased "Devil's Reject" heroin from Ortiz-Garcia in a controlled buy. Police obtained a warrant to search Ortiz-Garcia's residence and recovered a handgun, four bundles of "Devil's Reject" heroin and $880 in cash, including marked bills from the controlled buy. Laboratory tests confirmed that the heroin contained fentanyl.

After his arrest, Ortiz-Garcia waived his Miranda rights and admitted that he had been selling heroin since 2006. He admitted that he sold heroin to Podolski, but denied selling to Raudebaugh. Ortiz-Garcia immediately began cooperating with the Government and identified Ramos-Sanchez as one of his suppliers.

On February 27, 2007, Isaac Kennedy and Katy Rhoads died from acute fentanyl toxicity. Investigators determined that Thomas Sweger had supplied the fentanyl to Kennedy, and Sweger was arrested after he sold agents pure fentanyl in a controlled buy. Sweger waived his Miranda rights and informed agents that his supplier was Ramos-Sanchez. Agents additionally learned that a juvenile had sold heroin to Rhoads shortly before her death. When confronted, the juvenile confessed and identified Ramos-Sanchez as his supplier.

On March 7, 2007, agents made a controlled buy from Ramos-Sanchez using a confidential informant. Subsequently, agents went to the Ramos-Sanchez residence, obtained consent to search, and found three ounces of fentanyl. Ramos-Sanchez was advised of his rights and confessed, confirming that he had been supplying heroin to Ortiz-Garcia, Sweger, the juvenile and others.

3

Ramos-Sanchez reported that his own source of supply was "Aventura," later identified as Caesar Hernandez. Agents arrested Hernandez on June 5, 2007 in Philadelphia and obtained a confession. Hernandez admitted that he supplied heroin to Ramos-Sanchez, acting as a middleman between Ramos-Sanchez and larger heroin suppliers. Hernandez confirmed that he had been supplying heroin to Ramos-Sanchez every two to three weeks dating back to 2006.

On May 9, 2007, a grand jury in Harrisburg returned a thirteen-count superseding indictment charging Caesar Hernandez, Enrique Ramos-Sanchez, Felix Ortiz-Garcia and others with multiple counts relating to the unlawful distribution of heroin and fentanyl and conspiracy to do the same. The indictment alleged that the defendants' conduct caused the deaths of four individuals.

All three defendants entered into plea agreements with the Government, the terms of which varied. Common to all agreements, each defendant agreed to cooperate with the Government, which in turn would move for a downward departure from the Sentencing Guidelines for cooperation amounting to "substantial assistance." See U.S.S.G. § 5K1.1. Each pled guilty, each was sentenced, and each now appeals.

II.

Felix Ortiz-Garcia, No. 08-2580

Pursuant to his agreement with the Government, on October 23, 2007, Ortiz-Garcia pled guilty to Counts 3 and 13 of the superseding indictment. Count 3 charged the

4

unlawful distribution of heroin and fentanyl in violation of 21 U.S.C. § 841(a)(1), which carried a statutory maximum sentence of 20 years. Count 13 charged him with making materially false statements to the United States Department of Housing and Urban Development by concealing his drug trafficking activities while living in federally subsidized housing, in violation of 18 U.S.C. §§ 1101 and 1102, punishable by up to 10 years' imprisonment. After a lengthy colloquy at the plea change hearing, the Court accepted Ortiz-Garcia's plea.

As agreed, the Government moved at sentencing for a downward departure, pursuant to U.S.S.G. § 5K1.1, in recognition of Ortiz-Garcia's substantial assistance. The Court granted the motion and departed 59 months below the otherwise-applicable Guidelines range, a greater departure than the Government had recommended. After a detailed colloquy, Ortiz-Garcia was sentenced to 151 months' imprisonment, followed by supervised release, and restitution. All other charges were dismissed.

Against counsel's advice, Ortiz-Garcia ordered counsel to file the instant appeal. Thereafter, Ortiz-Garcia's counsel moved to withdraw as counsel pursuant to Third Circuit Local Appellate Rule 109.2, attesting that he could not identify any nonfrivolous arguments to raise before this Court. In support of that motion, he has filed a supplementary brief with this Court, as required under Anders. See United States v. Youla, 241 F.3d 296, 299-300 (3d Cir. 2001) (citing Anders, 386 U.S. at 745). Additionally, consistent with Anders, Ortiz-Garcia was furnished a copy of counsel's

5

brief and was informed of his right to raise additional points via an informal brief. Ortiz-Garcia has not done so.

In Anders, the Supreme Court established guidelines for a lawyer seeking to withdraw from a case when the indigent criminal defendant he represents wishes to pursue frivolous arguments on appeal. Youla, 241 F.3d at 299 (citing Anders, 386 U.S. at 745). If after a conscientious examination of the record, counsel determines that his client's case is wholly frivolous, he should advise the court and request permission to withdraw. Id. In addition, counsel must file an Anders brief which: (1) satisfies the court that counsel has thoroughly examined the record in search of appealable issues; and (2) explains why each arguably appealable issue is frivolous. Id. at 300. Our Local Appellate Rule 109.2(a) tracks these requirements.

When an appeal proceeds under Anders, our inquiry is twofold. First, we must evaluate whether counsel's brief fulfills the Anders requirements. Id. Second, we assess whether an independent review of the record presents any nonfrivolous issues. Id. If we agree that the appeal is without merit, we will grant trial counsel's Anders motion and dismiss the appeal without appointing new counsel. Id. (citing Third Circuit L.A.R. 109.2(a)). By contrast, if we find any of the legal points arguable on their merits (and therefore not frivolous), we must afford the indigent the assistance of counsel to argue the appeal. Id. (quoting Anders, 386 U.S. at 744).

Our review satisfies us that the brief submitted by Ortiz-Garcia's counsel meets the

Anders requirements. Consistent with Anders, counsel filed a thorough brief that demonstrates he has conscientiously examined the record in search of appealable issues. Counsel identifies three issues that might arguably support an appeal: (1) subject matter jurisdiction; (2) the validity and voluntariness of Ortiz-Garcia's guilty plea; and (3) the legality of the sentence. Thereafter, counsel explains why each issue is frivolous.

As to jurisdiction, counsel argues that any objection would be frivolous because a federal offense was charged. We agree.

As to plea validity, counsel argues that the Court's painstaking colloquy ensured the voluntariness of the plea, consistent with the governing standards of Boykin v. Alabama, 395 U.S. 238 (1969), and Rule 11 of the Federal Rules of Criminal Procedure. Directing us to the relevant portions of the transcripts, counsel argues that the Court's colloquy assured that Ortiz-Garcia understood the charges, the Government's factual allegations, the rights he waived by pleading guilty, the minimum and maximum terms of imprisonment, the advisory nature of the Sentencing Guidelines, and the circumstance that his plea could not be withdrawn. Thereafter, the Court expressly found that Ortiz-Garcia entered the plea voluntarily and understood both his rights and the consequences of entering a guilty plea. Counsel contends that this procedure ensured the voluntariness of Ortiz-Garcia's plea and that any argument to the contrary would be frivolous. We agree.

With respect to sentencing, counsel argues that the thorough sentencing colloquy

forecloses any argument that the sentence was either procedurally flawed or substantively unreasonable. Prior to the hearing, the Court granted Ortiz-Garcia's motion to foreclose the Government from introducing evidence that his conduct caused Raudebaugh's death, making him legally responsible only for Podolski's death. Then, at the sentencing hearing, the Court properly performed the three-step sentencing procedure required under United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006). The Court (1) arrived at a 210- to 262-month Guidelines range using an offense level of 37 and a category I-level criminal history; (2) ruled on outstanding motions and adjusted the Guidelines range accordingly; and (3) thoroughly considered each of the relevant sentencing factors under 28 U.S.C. § 3553(a). See id. Finally, counsel observes that Ortiz-Garcia's 151-month sentence, which was at the low end of the Guidelines range, was substantively reasonable in light of the § 3553(a) factors, and particularly, the seriousness of the crime and the resulting death. We agree.

After examining counsel's brief, we conclude that it appears adequate on its face. Additionally, our own independent review satisfies us that no nonfrivolous appealable issues exist. Accordingly, we will grant counsel's motion for withdrawal, dismiss Ortiz-Garcia's appeal and affirm his conviction and sentence.

III.

Enrique Ramos-Sanchez, No. 08-3681

Pursuant to his written plea agreement with the Government, on November 8,

2007, Ramos-Sanchez pled guilty to Count 12 of the superseding indictment, charging a conspiracy to distribute heroin and fentanyl that caused the deaths of four individuals. The charged offense carried a maximum sentence of lifetime imprisonment, and the initial Guidelines range was 240 to 262 months.

At sentencing, the Government moved for a downward departure in the Guidelines range pursuant to U.S.S.G. § 5K1.1, in recognition of Ramos-Sanchez's substantial assistance. The Court granted the motion for a 30-month downward departure, reducing the Guidelines range to 210 to 262 months. Thereafter, the Court entertained argument from both sides, considered Ramos-Sanchez's plea for leniency, and reviewed comprehensively the § 3553(a) factors. After a detailed colloquy, the Court sentenced Ramos-Sanchez to the Guidelines minimum of 210 months' imprisonment, followed by supervised release, and restitution. Ramos-Sanchez appealed.

Unlike counsel for Ortiz-Garcia and counsel for Hernandez, counsel for Ramos-Sanchez did not move to withdraw and instead has filed a brief on the merits. Through his appointed counsel, Ramos-Sanchez contends that the District Court abused its sentencing discretion in imposing a sentence that was both procedurally flawed and substantively unreasonable. See Jones, 566 F.3d at 365-366. In particular, he assigns error to the District Court's failure to "properly and sufficiently consider appellant's substantial cooperation with the government" and the unwarranted disparity between his sentence and that of codefendant Ortiz-Garcia. (Ramos-Sanchez Br. 9 (citing 18 U.S.C. §

9

3553(a)).) We disagree and hold that the District Court did not abuse its considerable sentencing discretion.

The Court's sentencing procedure was a textbook application of the three-step sentencing process we announced in Gunter, 462 F.3d at 247. Before imposing Ramos-Sanchez's sentence, the Court (1) calculated a 240- to 262-month Guideline range based on an offense level of 38 and a category III-level criminal history; (2) ruled on both parties' outstanding motions, granting a 30-month downward Guidelines departure for substantial assistance; and (3) adequately considered the relevant § 3553(a) factors. See id. In its § 3553(a) analysis, the Court specifically addressed Ortiz-Garcia's argument for a further downward departure given his substantial assistance, his acceptance of responsibility, and the more lenient sentence of his codefendant Ortiz-Garcia. The Court carefully explained its reasons for declining to depart further from the Guidelines range, emphasizing the severity of the offense, Ramos-Sanchez's criminal history, and his involvement in conduct that ultimately resulted in four deaths. The extensive colloquy is more than procedurally adequate.

In addition, the sentence imposed was substantively reasonable. The Court sentenced Ramos-Sanchez to a term of imprisonment at the low end of the Guidelines range, after granting a 30-month downward departure. To the extent that Ramos-Sanchez argues this downward adjustment should have been greater, we lack jurisdiction to review that claim. United States v. Torres, 251 F.3d 138, 145 (3d Cir. 2001) ("[W]e lack

10

jurisdiction to review the extent of a District Court's discretionary downward departure for substantial assistance to the government.").

Moreover, the disparity between the sentences of Ortiz-Garcia and Ramos-Sanchez was warranted. Ortiz-Garcia's 151-month sentence – a 59-month departure from the Guideline range of 210 to 262 months – reflected the circumstances that he was a category I-level criminal offender and had caused the death of only one individual. Unlike Ortiz-Garcia, Ramos-Sanchez had a category III-level criminal history and an offense level of 38, he was a "dealer's dealer," and he was legally responsible for four deaths. (Gov't/Ramos-Sanchez App. 107.) The Court considered Ramos-Sanchez's arguments for leniency, but determined that the circumstances did not warrant a further departure from the Guidelines range. In our view, the District Court acted well within its discretion in sentencing Ramos-Sanchez to 210 months' imprisonment, a term 30 months below the Guidelines minimum. We will affirm Ramos-Sanchez's conviction and his sentence.

IV

*Caesar Hernandez*, No. 08-4575

Pursuant to his plea agreement, on June 2, 2008, Hernandez pled guilty to Count 12 of the superseding indictment, which charged conspiracy to distribute and possess with intent to distribute heroin and fentanyl.

Although Hernandez's advisory Guidelines range was 168 to 210 months, based on an offense level of 35 and a category I-level criminal history, the statutory minimum

11

sentence was 20 years. Therefore, the Guidelines advisory sentence was 240 months. As agreed, the Government filed a motion pursuant to U.S.S.G. § 5K1.1, recommending a 30-month downward departure in recognition of Hernandez's substantial assistance to the Government. The Court granted the motion and imposed a sentence of 210 months' incarceration, followed by three years of supervised release, and restitution. Hernandez appealed.

Like counsel for Ortiz-Garcia, Hernandez's counsel moves this Court to withdraw as counsel, pursuant to L.A.R. 109.2, and has filed an Anders brief with this Court. As discussed above, we inquire first whether counsel's brief adequately fulfills the Anders requirements, and second, whether an independent review of the record presents any nonfrivolous issues. See Youla, 241 F.3d at 299 (citing Anders, 386 U.S. at 745). Because Hernandez filed an informal brief, we must consider his arguments as well.

Unlike counsel for Ortiz-Garcia, Hernandez's counsel "has not provided us with sufficient indicia that he has explored all possible issues for appeal." Marvin, 211 F.3d at 781. To begin, counsel purports to identify four arguably appealable issues: (1) jurisdiction, (2) plea validity, (3) sentence legality, and (4) ineffective assistance of counsel, but never addresses the District Court's jurisdiction. Although the federal charges at issue render the jurisdictional issue manifestly frivolous, this omission leaves us with doubts as to the thoroughness of counsel's review.

Most problematically, counsel's brief shares most of the deficiencies that doomed

12

the Anders brief in Youla, 241 F.3d at 299-301. There we rejected an Anders brief that contained a mere two pages of argument, cited little or no case law, and did not mention the arguments raised in the appellant's informal brief. Id. Much like the brief in Youla, Hernandez's Anders brief contains a mere two pages of argument, provides only one citation to the record, and cites legal authorities cursorily and without reference to the underlying facts. Counsel's failure to engage with the governing legal authorities is most problematic in his "analysis" of the procedural propriety of Hernandez's sentencing. Although counsel's brief acknowledges United States v. Booker, 543 U.S. 220 (2005), it ignores our precedents in Jones, 566 F.3d at 366, and Gunter, 462 F.3d at 247, which describe this Court's method for reviewing a district court's sentencing decisions. An Anders brief is insufficient if it fails to analyze the issues or "argue[s] the purportedly frivolous issues aggressively without explaining the faults in the arguments." Marvin, 211 F.3d at 781. In our view, Youla commands the conclusion that the Anders brief submitted by Hernandez's counsel is insufficient.

Given these inadequacies, we must reject counsel's Anders brief unless we are convinced that "frivolousness is patent." Id. We are. After considering Hernandez's informal brief and conducting our own review, we are persuaded that Hernandez can present only patently frivolous issues for appeal.

We first address the argument raised in Hernandez's informal brief, namely, that his plea was not knowing and voluntary. Hernandez, who speaks no English, had an

13

interpreter at his plea-change and sentencing hearings, but contends that he did not understand the charges against him. Hernandez also contends that the District Court had a duty to appoint him a bilingual attorney. He argues further that he agreed to the plea bargain in reliance on his attorney's assurance that the deal provided for "a sentence of not less than five (5) years and no more than (10) years." (Hernandez Br. at pt. II.) He contends that each of these circumstances deprived his plea of its voluntary character.

We disagree. To overcome his English-language difficulties, Hernandez had the benefit of an interpreter, and the Court paused the proceedings at least two times when it appeared Hernandez needed additional assistance. (Gov't/Hernandez App. 5, 7.) While under oath, Hernandez answered affirmatively the Court's question whether his attorney had explained the plea agreement paragraph-by-paragraph, with the aid of a translator. (Id. at 7.) Likewise, he answered affirmatively the Court's questions whether he (1) understood the charge and the elements of the offense (id. at 4, 16); (2) agreed to the contents of the plea agreement (id. at 7-8); (3) was voluntarily pleading guilty (id. at 10); (4) knew the minimum and maximum terms of imprisonment (id. at 11-12); (5) knew he was likely to be deported (id. at 11); (6) agreed with the Government's factual allegations (id. at 20); and (7) desired to forego a jury trial (id.). He answered negatively the Court's questions whether his decision to plead guilty was induced by threats, promises, force or offers. (Id. at 10.) Based on this record, it would be patently frivolous to argue that Hernandez's plea was involuntary because he did not understand English. We also find

14

frivolous Hernandez's asserted right to a bilingual attorney. This Court has not recognized such a right. See Gov't of V.I. v. Martinez, 847 F.2d 125, 127 (3d Cir. 1988).

We also dismiss Hernandez's contention that his plea was rendered involuntary by his attorney's alleged assurance that he would receive a five- to ten-year sentence. We have held that "[a]n erroneous prediction of a sentence by defendant's counsel does not render a guilty plea involuntary," particularly where the "[d]efendant acknowledged when pleading that he was aware that he could be sentenced to [the maximum term of imprisonment]." See Masciola v. United States, 469 F.2d 1057, 1059 (3d Cir. 1972). Here, the Court expressly informed Hernandez of the 20-year statutory minimum sentence and of the non-binding nature of both parties' sentencing recommendations. (Gov't/Hernandez App. 10-11, 12, 14-15.) Addressing Hernandez, the Court asked: "And do you understand that no one can guarantee you the actual sentence that you'll get from me, that that's up to me?" (Id. at 11.) Hernandez replied: "Yes." (Id.) The record simply does not support any nonfrivolous argument that counsel's alleged assurances rendered Hernandez's plea involuntary.

Finally, to the extent we can construe Hernandez's brief to allege ineffective assistance of counsel, that argument cannot be raised on direct appeal, as the record is insufficient to support such a claim. See United States v. Headley, 923 F.2d 1079, 1083 (3d Cir. 1991) (citation omitted). Hernandez remains free to raise this argument via a petition pursuant to 28 U.S.C. § 2255.

15

We are persuaded by our own independent review that no nonfrivolous appealable issues exist. Although we note the Court did not comply perfectly with Rule 11 of the Federal Rules of Criminal Procedure, these shortcomings were insufficient to render the plea involuntary.[2] In particular, the District Court failed to explicitly inform Hernandez of: (1) his right to persist in his plea of not guilty, Rule 11(b)(1)(B); (2) his right to counsel at every stage of trial and appellate proceedings, Rule 11(b)(1)(D); and (3) the Court's authority to order restitution, Rule 11(b)(1)(K). But because no Rule 11 objection was lodged at the hearing, these errors do not render Hernandez's plea involuntary unless Hernandez can "show a reasonable probability that, but for the error, he would not have entered the [guilty] plea." United States v. Benitez, 542 U.S. 74, 83 (2004).[3] On this record, we conclude that he cannot do so.

Although the District Court did not explicitly inform Hernandez of his right to

---

[2]We are disappointed in the Anders brief and the Government's brief, which both confidently assert that the District Court's colloquy complied with Rule 11.

[3]Because Hernandez lodged no Rule 11 objection in the plea change hearing, we review these Rule 11 violations for plain error. United States v. Vonn, 535 U.S. 55, 59 (2002). "Plain error requires that there must be (1) error, (2) that is plain or obvious, and (3) that affects a defendant's substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Goodson, 544 F.3d 529, 539 (3d Cir. 2008) (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)) (alterations and internal citations omitted). The burden is on the defendant to persuade us that any error affected his substantial rights. United States v. Adams, 252 F.3d 276, 285 (3d Cir. 2001). In the context of allegedly plain error under Rule 11, Hernandez would be required to "show a reasonable probability that, but for the error, he would not have entered the [guilty] plea." Benitez, 542 U.S. at 83.

persist in his plea of not guilty, the Court made it clear that the purpose of the plea change hearing was to determine whether Hernandez would choose to plead guilty or not. (See, e.g., Gov't/Hernandez App. 15 ¶ 14-25.) Our review persuades us that Hernandez understood his right to plead not guilty. This Rule 11 error, therefore, did not affect Hernandez's substantial rights.

The District Court also failed to inform Hernandez of both the Court's authority to order restitution and his right to an attorney at all stages of the proceedings. Rule 11(b)(1)(D), (K). Although these lapses clearly contravene Rule 11, the record does not suggest a reasonable probability that, absent these errors, Hernandez would not have pled guilty. See Benitez, 542 U.S. at 83; United States v. Lovett, 844 F.2d 487, 492 (7th Cir. 1988) (holding that the district court's failure to inform the defendant of his right to counsel was harmless). Hernandez was represented by appointed counsel at the time he entered his plea, suggesting he was aware of an indigent defendant's right to representation in criminal proceedings. Moreover, Hernandez pled guilty after being informed that the Court could fine him up to $4 million, suggesting his decision to plead guilty would not be affected by the prospect of paying restitution. In view of Hernandez's clear statement that he committed the crime charged and the myriad evidence against him, we do not believe either of these errors affected his decision to plead guilty.

Our review additionally persuades us that Hernandez's sentencing was free of error. As was procedurally required under Gunter, 462 F.3d at 247, the Court (1) arrived

17

at an advisory Guidelines point of 240 months based on the statutory minimum sentence of 20 years; (2) granted the Government's motion for a 30-month downward departure under U.S.S.G. § 5K1.1, reducing the Guidelines point to 210 months; and (3) considered each of the relevant § 3553(a) factors. (Gov't/Hernandez App. 15.) The Court imposed a 210-month sentence, explaining that the sentence was warranted given the severity of the offense; Hernandez's responsibility for the deaths of four individuals; the need for deterrence; the need to protect the public; and the sentences of Hernandez's codefendants, who were lower-level dealers. The Court noted Hernandez's lack of criminal history and his plea for leniency, but determined "there is utterly nothing in front of me that would cause me to vary from the advisory Guideline range." (Id. at 17.) In our view, this colloquy was procedurally proper, and the resulting sentence – 30 months below the statutory minimum – was substantively reasonable.

Notwithstanding the inadequacy of counsel's Anders brief, we conclude that Hernandez is unable to raise any nonfrivolous arguments. We will therefore affirm Hernandez's conviction and sentence, and we will grant counsel's motion to withdraw.

\* \* \* \* \*

We have considered all contentions presented by the parties to all three appeals and conclude that no further discussion is necessary.

For the foregoing reasons, we will affirm the judgments of the District Court and

18

grant the <u>Anders</u> motions of counsel for Ortiz-Garcia and Hernandez.