NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0077n.06

No. 23-6113

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 11, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) ) | |
| ERNESTO MENDEZ-LOPEZ, | ) | OPINION |
| Defendant-Appellant. | ) ) | |

Before: WHITE, READLER, and MATHIS, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Defendant-Appellant Ernesto Mendez-Lopez appeals his conviction and sentence for coercing a minor to engage in sexually explicit conduct, arguing that his guilty plea is invalid because it was not knowing and voluntary, and his sentence is substantively unreasonable. Because both his plea and sentence are valid, we AFFIRM.

## I. Facts

In February 2023, a 911 dispatch center in Kentucky received a call from the thirteen-year-old stepdaughter of Defendant-Appellant Ernesto Mendez-Lopez. The child stated that Mendez-Lopez had raped her "numerous times, beginning when she was 11 years of age," and that she was afraid he would do it again. R. 16, PID 42. During the ensuing investigation, Mendez-Lopez admitted to police that "he would drink excessively and, during these times, he had engaged in sexual acts" with his stepdaughter. *Id.* Police seized Mendez-Lopez's cellphone, which contained videos of Mendez-Lopez raping his stepdaughter. Mendez-Lopez admitted that he took these videos.

Mendez-Lopez pleaded guilty to one count of "coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct," in violation of 18 U.S.C. § 2251(a). *Id.* at 41. In exchange, the Government dropped four other counts related to the production and possession of child pornography. As part of the plea agreement, Mendez-Lopez "waive[d] the right to appeal the guilty plea and conviction." *Id.* at 45. And "[e]xcept for claims of ineffective assistance of counsel," he "waive[d] the right to attack collaterally the guilty plea, conviction, and sentence." *Id.*

Mendez-Lopez, who is in his late thirties, immigrated illegally to the United States when he was fifteen. According to the pre-sentence report, Mendez-Lopez "speaks Spanish and some English." R. 39, PID 123. The plea agreement he signed was drafted in English, and Mendez-Lopez did not receive a written translation in Spanish.

The district court held a change-of-plea hearing in August 2023. At the hearing, the court provided a Spanish-language interpreter to assist Mendez-Lopez. With that interpreter present, the prosecutor and district court each discussed the plea agreement in detail, and Mendez-Lopez repeatedly responded that he understood the agreement's terms. He also testified that he can "read and understand" English, but "cannot write" in English. R. 45, PID 140. At the end of the hearing, Mendez-Lopez entered his guilty plea, which the district court accepted.

At the sentencing hearing, the district court once again provided Mendez-Lopez with an interpreter. Applying the sentencing guidelines, the district court found that Mendez-Lopez's total offense level was 43, his criminal history category was I, and although his guideline range "ordinarily would be . . . life imprisonment," the statutory maximum sentence reduced that range to thirty years. R. 46, PID 169. The statute also mandated a supervised-release term of from five years to life. Mendez-Lopez moved for a downward variance from the thirty-year prison sentence,

arguing that a reduced sentence was appropriate because he is a "reliable and trustworthy" worker who "developed a serious problem with alcohol." R. 25, PID 69–70. He also noted that he will likely "be deported" once he is released from prison, so a shorter prison term will pose less "risk to the American public." *Id.* at 70. The district court denied the motion and imposed the thirty-year prison sentence recommended under the sentencing guidelines. The district court also imposed a life term of supervised release.

## II. Analysis

Mendez-Lopez argues that his plea agreement was not knowing and voluntary and his sentence is substantively unreasonable. Both arguments are unpersuasive.

### A. Knowing and Voluntary Plea Agreement

Mendez-Lopez contends that his plea agreement is invalid because he "did not knowingly and voluntarily" sign it. Appellant's Brief at 10. A defendant may "waive any right by means of a plea agreement," so long as the waiver is "knowing and voluntary." *United States v. Smith*, 960 F.3d 883, 886 (6th Cir. 2020) (cleaned up). Where—as here—a defendant claims that he did not understand the plea agreement's terms, this court evaluates the "contemporaneous evidence" of his knowledge and intent at the time he entered his plea. *United States v. Presley*, 18 F.4th 899, 905–06 (6th Cir. 2021) (quotation omitted). The parties agree that because Mendez-Lopez did not raise the "knowing and voluntary" issue in the district court, our review is for plain error. To prevail on plain-error review, Mendez-Lopez must show "an (1) error (2) that was obvious or clear, (3) that affected his substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020) (cleaned up). Mendez-Lopez argues that his plea agreement is invalid because of three purported errors. We disagree.

*First*, Mendez-Lopez argues that he did not understand the plea agreement's terms because he "speaks primarily Spanish." Appellant's Brief at 9–10. To begin, it is not "obvious or clear" from the record that Mendez-Lopez lacked sufficient English skills to understand his plea agreement. *See Hobbs*, 953 F.3d at 857. Although the opening brief asserts that Mendez-Lopez "primarily" speaks Spanish, it makes no concrete representations about Mendez-Lopez's ability to read or understand English. Mendez-Lopez had been in the United States for more than twenty years when he pleaded guilty; he arrived when he was fifteen years old, and he was thirty-six years old at the hearing. The pre-sentence report states that Mendez-Lopez "speaks Spanish and some English." R. 39, PID 123. And Mendez-Lopez testified at the plea hearing that he could "read and understand" English. R. 45, PID 140.

But even accepting that Mendez-Lopez's English skills are limited, there is still ample evidence that Mendez-Lopez understood the terms of the plea agreement when he pleaded guilty. *See Presley*, 18 F.4th at 905. A defendant's "affirmations" about the plea agreement at the plea hearing can provide evidence that a plea is knowing and voluntary. *Id.* Indeed, this court has held that a defendant knowingly and voluntarily pleaded guilty where the district court "carefully explained" the plea agreement's terms and the defendant confirmed that he "understood and agreed." *Smith*, 960 F.3d at 886. Such "admissions at the plea hearing" are a "formidable barrier to later claims that the defendant misunderstood something about the plea." *United States v. Ellis*, 115 F.4th 497, 501 (6th Cir. 2024) (quotations omitted).

At Mendez-Lopez's plea hearing, the prosecutor and the district court—with an interpreter present to assist—explained each provision of the plea agreement in great detail. Mendez-Lopez stated that his attorney read the plea agreement to him and answered "[y]es" when the district court asked whether he understood the agreement's terms. R. 45, PID 143. The district court asked

4

whether the prosecutor had "accurately summarize[d]" the agreement, and Mendez-Lopez once again answered "[y]es." *Id.* at 147. Mendez-Lopez also confirmed that the government had not made any promises outside the plea agreement, that no one had made any threats to force him to sign the agreement, and that no one had promised him a specific sentence. The district court then thoroughly described the rights Mendez-Lopez was giving up by pleading guilty. As the district court did so, it asked Mendez-Lopez several times whether he understood the rights he was waiving—and each time, Mendez-Lopez confirmed that he did.

An interpreter was present for all these interactions. Yet at no point did Mendez-Lopez indicate that he was unable to understand the proceedings or the agreement. Nor did he indicate in any way at the hearing that his purported lack of English skills caused him to be confused about the plea agreement's terms when he signed. Instead, he repeatedly affirmed the opposite—stating again and again under oath that he understood what he had signed. Those "affirmations at the . . . plea colloquy" provide strong "contemporaneous evidence" that Mendez-Lopez knowingly and voluntarily entered the plea agreement. *See Presley*, 18 F.4th at 905–06 (quotation omitted).

This court reached a similar conclusion in *United States v. Heraldez-Arangure*, 97 F. App'x 528 (6th Cir. 2004) (order). There, the defendant, who was "marginally conversant in English," argued that the district court had failed ensure that he understood the plea agreement's terms. *Id.* at 530. This court held there was no plain error because "a Spanish-language interpreter was provided," "[t]he parties faithfully recited in open court the terms" of the plea agreement, and the district court made "painstaking efforts . . . to provide [the defendant] with a meaningful dialogue" about the rights he was giving up. *Id.* Just so here. *See also, e.g.*, *United States v. Ibarra–Coronel*, 517 F.3d 1218, 1222–23 (10th Cir. 2008) (defendant's plea was knowing and voluntary because "[a] court interpreter's services were made available and employed" at the plea hearing and the

defendant "failed to indicate . . . that her inability to speak or read English compromised her understanding of the plea agreement"); *United States v. Diaz-Vargas*, 35 F.3d 1221, 1225–26 (7th Cir. 1994) (defendant's plea was knowing and voluntary despite his "tenuous grasp of the English language" because "the court provided . . . an interpreter" at the plea hearing); *United States v. Ortiz-Garcia*, 383 F. App'x 119, 127 (3d Cir. 2010) (defendant's plea was knowing and voluntary because he confirmed that he "agreed to the contents of the plea agreement" at the plea hearing, where he "had the benefit of an interpreter").

Further, Mendez-Lopez has not shown that any purported error "affected his substantial rights." *Hobbs*, 953 F.3d at 857 (cleaned up). Where a defendant claims he did not understand the plea agreement, proving this element requires showing "a reasonable probability" that the defendant "would not have entered the plea" if he had sufficiently understood the agreement's terms. *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)). In analyzing this element, a court "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded." *Id.* (quoting *Lee v. United States*, 582 U.S. 357, 368 (2017)). Rather, it should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* (quotation omitted).

Here, Mendez-Lopez does not even expressly state in his appellate brief that he would not have entered the plea had he understood the agreement. And it is unclear how he could make such an argument. The agreement's terms and their legal consequences were explained to him in painstaking detail at the plea hearing—with an interpreter present. Yet Mendez-Lopez stated he understood those consequences and proceeded to plead guilty. Given that "contemporaneous evidence," Mendez-Lopez cannot show a "reasonable probability that . . . he would not have

6

entered the plea" but for the alleged language barrier. *See Hobbs*, 953 F.3d at 857 (quotation omitted).

*Second*, Mendez-Lopez argues that the plea agreement is invalid because the agreement contains a "confusing" provision regarding the waiver of his rights to appeal and collaterally attack his conviction. Appellant's Brief at 9–10. In its entirety, that provision states:

> The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

R. 16, PID 45. As Mendez-Lopez sees it, this provision is confusing because it waives his "right to collaterally attack his sentence" but not his "right to appeal his sentence." Appellant's Brief at 12. But nothing about this provision is misleading or confusing. Rather, the provision is explicit about Mendez-Lopez's appellate and collateral-attack rights. The mere fact that those rights are not coextensive does not make the agreement unclear.

Further, the district court thoroughly explained this provision at the sentencing hearing. The district court told Mendez-Lopez that he was "reserving the right to appeal any aspect of the sentence." R. 45, PID 153. The district court asked Mendez-Lopez if he wanted the court "to go over that again," and Mendez-Lopez answered, "[n]o, it's fine." *Id.* at 153–54. The district court then told Mendez-Lopez that he was "waiving the right to attack collaterally . . . the sentence." *Id.* at 154. And the district court explained that a collateral-attack waiver means "you're giving up the right to file a separate lawsuit or separate motion to challenge these matters," "[s]ometimes . . . referred to as a habeas motion or habeas proceeding." *Id.* And when the district court later asked, "[a]gain, do you understand" that a guilty plea "would waive or give up the rights . . . just described," Mendez-Lopez answered "[y]es." *Id.* at 157. Simply put, there is no

"contemporaneous evidence" that Mendez-Lopez found this provision confusing or misleading, as he now asserts on appeal. *See Presley*, 18 F.4th at 905 (quoting *Hobbs*, 953 F.3d at 857).

*Third*, Mendez-Lopez argues that the district court failed to comply with Federal Rule of Criminal Procedure 11(b)(1)(N), which requires a district court to "determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Mendez-Lopez does not develop his argument that Rule 11 has been violated; he merely states that "the trial court gave limited focus and did not sufficiently question the Defendant on his understanding of the terms." Appellant's Brief at 19.

Under Rule 11, a provision waiving appellate or collateral-attack rights must be "discussed in open court" by either the district court or the prosecutor, and the district court must ensure that the defendant understands the provision. *United States v. Sharp*, 442 F.3d 946, 952 (6th Cir. 2006). The district court need not "ask a particular question about the appellate-waiver provision"— rather, it need only "ascertain that the defendant understands the terms of the plea agreement" generally. *Id.* at 951. Here, the appeal and collateral-attack waiver was "discussed in open court" by both the district court and the prosecutor. Mendez-Lopez stated that the prosecutor correctly summarized the plea agreement, and he confirmed that he understood the rights he was waiving by pleading guilty, as "described" by the district court. That is all Rule 11 requires.

## B. Substantive Reasonableness of the Sentence

Mendez-Lopez next argues that his prison sentence and supervised release term are substantively unreasonable. A substantive-unreasonableness challenge by a defendant is "a claim that a sentence is too long." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). A sentence is substantively unreasonable if the district court "selects the sentence arbitrarily," "bases the sentence on impermissible factors," "fails to consider pertinent § 3553(a) factors," or "gives

an unreasonable amount of weight to any pertinent factor." *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008) (cleaned up). We presume that a "within-guidelines sentence" is substantively reasonable unless a defendant proves otherwise. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). And we review a substantive-unreasonableness challenge for abuse of the district court's sentencing discretion. *United States v. Massey*, 663 F.3d 852, 856 (6th Cir. 2011).

Mendez-Lopez first argues that his sentence of thirty years in prison and a life term of supervised release is substantively unreasonable because the district court did not sufficiently consider "the fact that [he] [i]s a noncitizen," making him ineligible for certain early-release programs. Appellant's Brief at 24–26. Mendez-Lopez notes that noncitizen prisoners are generally ineligible for programs that permit early release from prison, such as "community confinement" and "furlough." *Id.* Thus, where a noncitizen receives the same sentence as a citizen, the noncitizen will generally end up spending more time in prison. As Mendez-Lopez sees it, the district court abused its discretion by failing to consider this "disparate treatment" as a mitigating factor in calculating the sentence. *Id.*

But Mendez-Lopez did not raise this mitigating factor in the district court. A district court need only analyze the particular mitigating factors a party raised during sentencing. *Walls*, 546 F.3d at 737; *United States v. Roser*, 529 F. App'x 450, 453–54 (6th Cir. 2013) ("[W]hen a defendant fails to raise a specific mitigating factor at sentencing, the district court's failure to consider the unargued factor is not an abuse of discretion."). Here, Mendez-Lopez moved in the district court for a downward variance from the thirty-year guideline-recommended sentence. That motion primarily argued that Mendez-Lopez was a "reliable and trustworthy" worker who was "remorseful" and had "a serious problem with alcohol." R. 25, PID 69–70. The motion did state that Mendez-Lopez could be "deported" after serving his sentence—but only to support the

9

assertion that he would not be a danger to the "American public" if he received a shorter prison term, since he would be removed from the country upon release. *Id.* at 70. Nowhere in the district court record did Mendez-Lopez say anything about noncitizens being ineligible for early-release programs.

But even if that passing reference to deportation sufficiently raised the issue, the sentence is still substantively reasonable. Where a defendant raises a mitigating factor, a district court need only "explain[] why it would not vary below the Guidelines" based on that factor. *United States v. Ushery*, 785 F.3d 210, 224 (6th Cir. 2015). A defendant's mere disagreement with the district court's rejection of a mitigating factor does not "justify reversal on substantive-reasonableness grounds." *Id.*

Here, the district court noted that Mendez-Lopez "filed a motion for a variance," R. 46, PID 167, and that he may be "deported" after his sentence, *id.* at 180. But the district court found that any "variance below" the thirty-year guideline sentence would be inappropriate because thirty years was the "minimum sentence" the court could impose considering the Section 3553(a) factors. *Id.* at 179. Specifically, the district court found that thirty years "is certainly not greater than necessary and may not be sufficient" to punish Mendez-Lopez's "unconscionable conduct." *Id.* at 176. Anything less would not "reflect the seriousness of this particular offense," given that Mendez-Lopez harmed a child "physically, emotionally, [and] mentally" and "betrayed his family." *Id.* at 176–77. The district court denied the variance motion "for th[ose] reasons." *Id.* at 179. In other words, to the extent Mendez-Lopez could be said to have raised his noncitizen status in the variance motion, the district court "considered" the motion and "explained why it would not vary below the Guidelines" based on that motion. *Ushery*, 785 F.3d at 224. Mendez-Lopez may

"disagree[] with the district court's conclusion," but "that is an insufficient basis to justify reversal on substantive-reasonableness grounds." *Id.*

Mendez-Lopez responds by citing several cases in which appellate courts have discussed a district court's discretion to consider a defendant's noncitizen status as a mitigating factor in sentencing. *See United States v. Navarro-Diaz*, 420 F.3d 581, 588 (6th Cir. 2005); *United States v. Davoudi*, 172 F.3d 1130, 1134 (9th Cir. 1999); *United States v. Farouil*, 124 F.3d 838, 846 (7th Cir. 1997). But those cases hold at most that a district court is "free to consider" a defendant's lack of citizenship under its "broad discretion" at sentencing to analyze "any unusual or exceptional factor present in the case." *See, e.g.*, *Farouil*, 124 F.3d at 847 (quotation omitted). Those opinions do *not* support the argument Mendez-Lopez makes here: that a district court abuses its discretion when it deems the defendant's noncitizen status an insufficient reason to vary downward from the guideline sentence.

Second, Mendez-Lopez argues that his term of supervised release is substantively unreasonable because it is "contrary to the purpose and intent of supervised release." Appellant's Brief at 26–27. As Mendez-Lopez sees it, the "primary function of supervised release" is "re-integration in the community," so he believes there is no reason to order a term of supervised release for a noncitizen who may be deported after leaving prison. *Id.*

This argument is mistaken. Supervised release serves "dual goals": (1) "the rehabilitation of the defendant," and (2) "the protection of the public." *United States v. Lay*, 583 F.3d 436, 450 (6th Cir. 2009) (quoting *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992)). A term of supervised release is thus substantively reasonable if it is "reasonably related" to these goals, a standard which allows the district court to "balance[] the legitimate interests of society against [the defendant's] liberty interests." *Id.* (quotations omitted). This balance heavily favors "protect[ing]

11

the public from potential recidivism" where a defendant has committed "sexual offenses against minors" because the "public has an obvious interest" in preventing that defendant from having "opportunities to commit such crimes again." *Id.* Thus, to prevail here, Mendez-Lopez must show that his supervised release term is "unrelated to public safety." *Id.* at 449.

Mendez-Lopez makes no such showing. The district court imposed a life term of supervised release—along with several conditions designed to keep Mendez-Lopez away from children—because it believed that Mendez-Lopez "poses too much of a danger" to the public. R. 46, PID 178, 179–85. The district court noted that this term of supervised release would be "necessary" to protect the public if Mendez-Lopez were "for some reason not deported" after his prison sentence, or if he "is deported and re-enters." *Id.* at 180. Faced with those express findings, Mendez-Lopez does not attempt to argue that his supervised release terms are unrelated to public safety. Rather, he argues only that supervised release is unjustified because there is no need to re-integrate him into the community.

Mendez-Lopez also argues that the district court abused its discretion because the sentencing guidelines "discourage[]" courts from imposing supervised release on a defendant who may be deported. Appellant's Brief at 27. In full context, Sentencing Guideline 5D1.1(c) states that a district court "ordinarily should not impose a term of supervised release" on a "deportable alien" "in a case in which supervised release is not required by statute." U.S. Sent'g Guidelines Manual § 5D1.1(c) (U.S. Sent'g Comm'n 2024). Here, however, supervised release *is* required by statute: 18 U.S.C. § 3583(k) requires supervised release in "any term of years not less than 5, or life." So Guideline 5D1.1(c) does not apply—i.e., this is not "a case in which supervised release is not required by statute." *Id.*

Further, the commentary to the guidelines clarifies that a district court should impose supervised release on a defendant who may be deported "if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." *Id.* cmt. n. 5. That is precisely what the district court did here: Prior to sentencing, it stated that it would base its determination on the "need to protect the public from any future potential crimes." R. 45, PID 152. And at sentencing, it imposed the thirty-year prison term to provide "protection for the public while the defendant is incarcerated" and the lifelong supervised release to provide "further protection," which it found "necessary in this case for . . . protection of the public." R. 46, PID 178–80. Mendez-Lopez does not explain why that conclusion is substantively unreasonable. *See, e.g.*, *United States v. Rodriguez-Lopez*, 561 F. App'x 627, 629 (9th Cir. 2014) (citing § 5D1.1(c) cmt. n. 5) (holding that a district court did not abuse its discretion by imposing supervised release on a deportable noncitizen because the district court found a case-specific need "to provide adequate deterrence").

## III. Conclusion

For the foregoing reasons, we AFFIRM.