**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 16-4367

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

   v.

DEAN WASHINGTON WALKER,

          Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Cameron McGowan Currie, Senior District Judge.  (3:15-cr-00827-CMC-1)

Argued:  March 24, 2017                         Decided:  May 24, 2017

Before TRAXLER and WYNN, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed by published opinion.  Judge Traxler wrote the opinion, in which Judge Wynn and Senior Judge Davis joined.

**ARGUED:** Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  William E. Day, II, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee.  **ON BRIEF:** Beth Drake, Acting United States Attorney, Jimmie Ewing, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

TRAXLER, Circuit Judge:

Dean Washington Walker, a native of Jamaica, pleaded guilty to illegal re-entry after being convicted of an aggravated felony. *See* 8 U.S.C. § 1326(b)(2). At sentencing, the district court concluded that Walker's prior drug conviction in Ohio qualified as a "drug trafficking offense," and the district court therefore applied the 16-level enhancement called for by the then-current version of U.S.S.G. § 2L1.2(b)(1)(A)(i) (2015). With the 16-level enhancement, Walker's offense level was 21, which, when combined with his category III criminal history, yielded an advisory sentencing range of 46-57 months. The district court varied downward and sentenced Walker to 30 months' imprisonment.

Walker appeals, challenging only the application of the 16-level enhancement. Finding no error, we affirm.

I.

To determine whether a prior conviction qualifies as a predicate offense under § 2L1.2, we apply the categorical approach, comparing the elements of the underlying offense to the federal definition. *See, e.g., United States v. Alfaro*, 835 F.3d 470, 472 (4th Cir. 2016). If the elements of the underlying offense "correspond[] in substance" to the federal definition, *Taylor v. United States*, 495 U.S. 575, 599 (1990), the underlying offense categorically qualifies for the enhancement.

In 2004, Walker pleaded guilty to a charge of drug trafficking under Ohio law. The statute under which he was convicted states:

2

No person shall knowingly . . . [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

Ohio Rev. Code Ann. § 2925.03(A)(2).

At the time of Walker's sentencing, U.S.S.G. § 2L1.2 provided for a 16-level enhancement in illegal entry cases where the defendant was deported after "a conviction for a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months." U.S.S.G. § 2L1.2(b)(1)(A)(i) (2015).[1] The Commentary to § 2L1.2 defined "drug trafficking offense" as

an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) *with intent to manufacture, import, export, distribute, or dispense*.

U.S.S.G. § 2L1.2, cmt. n.1(B)(iv) (2015) (emphasis added).

A.

Focusing on the "with intent to manufacture . . ." language of the Guidelines, Walker argues that his Ohio conviction does not qualify as a drug trafficking offense because the statute requires only that the defendant act knowingly rather than with specific intent, as he contends is required by the Guidelines. According to Walker, his

---

[1] This section of the Sentencing Guidelines was amended effective November 1, 2016. The present version of § 2L1.2 provides for escalating offense-level enhancements based on the length of sentence imposed for prior convictions. *See* U.S.S.G. § 2L1.2(b)(2) (2016).

prior conviction qualifies only as a "felony," which warrants a 4-level enhancement under § 2L1.2(b)(1)(D). We disagree.

Walker's argument is based on a misreading of the Guidelines' definition of a "drug trafficking offense." As Walker reads the definition, the "with intent . . ." language applies to every one of the listed prohibited acts, not just to the act of possession. Walker thus effectively rewrites the definition of "drug trafficking offense" to read:

> an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, possession or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) ~~or the possession of a controlled substance (or a counterfeit substance)~~ with intent to manufacture, import, export, distribute, or dispense.

Of course, we must apply the definition as written, not as Walker wishes it were written. Given the Guidelines' repetition of the *object* of the prohibited acts – "controlled substance (or a counterfeit substance)," it is clear that "drug trafficking offense" encompasses two kinds of offenses: (1) offenses involving the manufacturing, importation, or distribution of controlled (or counterfeit) substances, and (2) offenses involving possession of controlled (or counterfeit) substances where that possession is for the specific purpose of engaging in distribution-related activities. *See United States v. Ponce-Rodriguez*, 863 F. Supp. 2d 536, 539 (E.D. Va. 2012) ("An offense of conviction constitutes a 'drug trafficking offense' under § 2L1.2 if, and only if, the offense actually required proof of either (i) 'the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance)' or (ii) 'the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.'" (quoting U.S.S.G. § 2L1.2, cmt.

4

n.1(B)(iv)). This reading of the Guidelines' definition makes sense, as courts have long distinguished between mere possession of drugs and trafficking in drugs. *See, e.g., Lopez v. Gonzales*, 549 U.S. 47, 53-54 (2006) (noting that "ordinarily 'trafficking' means some sort of commercial dealing," and rejecting argument that "would often turn simple possession into trafficking, just what the English language tells us not to expect"); *United States v. Renteria-Martinez*, 847 F.3d 297, 300 (5th Cir. 2017) (per curiam) ("Possession alone does not equate to drug trafficking.").

We therefore conclude that, under the previous version of § 2L1.2, the specific "intent to manufacture, import, export, distribute, or dispense" is an element that must be established only for drug *possession* offenses.[2] The absence of a specific-intent requirement in the Ohio statute thus does not prevent Walker's conviction from qualifying as a drug trafficking offense under U.S.S.G. § 2L1.2(b)(1)(A)(i) (2015).

B.

Because the absence of a specific-intent element in the Ohio statute does not preclude application of the 16-level sentence enhancement, the dispositive question is

---

[2] Although § 2L1.2 does not specify a mens rea for the non-possession offenses qualifying as drug trafficking, we think it clear that the "knowing" standard reflected in the Ohio statute is sufficient. As noted above, the Guidelines define "drug trafficking offense" as an offense under state or *federal* law prohibiting distribution of controlled substances. *See* U.S.S.G. § 2L1.2, cmt. n.1(B)(iv) (2015). The federal statute prohibiting distribution of controlled substances applies to defendants who "knowingly or intentionally" violate its terms. *See* 21 U.S.C. § 841(a). If the "knowing" standard used in the Ohio statute were not sufficient to qualify distribution offenses as "drug trafficking offenses" under the Guidelines, then § 841 would be overbroad for purposes of the categorical approach, such that no federal convictions under § 841 would qualify as drug trafficking offenses under § 2L1.2.

5

whether Ohio Rev. Code Ann. § 2925.03(A)(2) categorically qualifies as a statute prohibiting "the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance)." U.S.S.G. § 2L1.2, cmt. n.1(B)(iv) (2015). We believe that question must be answered in the affirmative.

The Ohio statute qualifies as a drug trafficking offense under the categorical approach only if all of the ways of violating the statute, including the least culpable, satisfy the Guidelines' definition of a drug trafficking offense.[3] *See, e.g., United States v. Flores-Granados*, 783 F.3d 487, 492 (4th Cir. 2015); *United States v. King*, 673 F.3d 274, 278 (4th Cir. 2012). As noted above, the statute applies to defendants who knowingly "prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute" controlled substances, so long as the defendants do those acts "knowing, or having reason to know, that the substance is intended for sale." *State v. Cabrales*, 886 N.E.2d 181, 188 (Ohio 2008).

In *United States v. Karam*, 496 F.3d 1157 (10th Cir. 2007), the Tenth Circuit considered whether a conviction under the same Ohio statute qualified as a "controlled

---

[3] If the various acts listed in Ohio Rev. Code Ann. § 2925.03(A)(2) were alternate *elements* of what amount to *separate* crimes, the statute would be "divisible," such that we could consult a limited universe of documents "to determine what crime, with what elements, [Walker] was convicted of." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). It appears that the acts listed in § 2925.03(A)(2) are various means by which the single trafficking offense can be committed and that the statute therefore is *not* divisible. *See State v. Cabrales*, 886 N.E.2d 181, 189 (Ohio 2008). Nonetheless, even if the statute were divisible, the indictment against Walker simply tracks the statutory language and lists all of the acts mentioned in the statute. The modified categorical approach thus would be of no assistance in this case.

6

substance offense" under the career-offender guideline.  *See* U.S.S.G. § 4B.1.2(b).[4]  The

court concluded that all of the acts prohibited by the Ohio statute qualify as

"distribution":

> While the relevant portion of the Ohio statute prohibits conduct which alone may consist of no more than mere possession, it does so only "when the offender knows or has reasonable cause to believe the controlled substance is intended for sale or resale by . . . another."  Ohio Rev. Code Ann. § 2925.03(A)(2).  This language makes clear that the statute prohibits only acts of distribution and does not extend to the possession of drugs for personal use.  If an individual has knowledge or reasonable cause to believe drugs are intended for sale by another, the preparation for shipment, shipment, or transport of those drugs cannot simply involve the possessory act of one person moving his own drugs, as Karam asserts.  Rather, each of these acts is an integral part of the distribution process and is therefore an act of distribution in and of itself.  Simply because the Ohio statute prohibits each of the various phases of the distribution process does not make any one of these intervening acts any less an act of distribution than the final step in the process.

*Karam*, 496 F.3d at 1167-68; *accord United States v. Fuentes-Oyervides*, 541 F.3d 286,

289 (5th Cir. 2008) (per curiam) ("[W]e agree with the Tenth Circuit's understanding that

an individual who prepares for shipment, ships, transports, delivers, prepares for

distribution, or distributes a controlled substance while he knows or should know that the

substance is intended for sale, commits an act of distribution under the Guidelines.").

---

[4] The Guidelines' definition of "controlled substance offense" is substantively identical to the definition of "drug trafficking offense" at issue here.  *See* U.S.S.G. § 4B.1.2(b) ("'[C]ontrolled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.").

We agree. Because the Ohio statute requires that the prohibited acts be done with knowledge of the intended sale, each of the prohibited acts are acts of distribution, not mere possession. If nothing else, a defendant who packs drugs for shipment knowing that someone else intends to sell the drugs has at least aided and abetted drug distribution, which is sufficient to support the enhancement. *See* U.S.S.G. § 2L1.2, cmt n.5 (2015) ("Prior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses."). Convictions under the Ohio statute therefore categorically qualify as drug trafficking offenses under the Guidelines.

Walker contends, however, that this court in *United States v. Maroquin-Bran*, 587 F.3d 214 (4th Cir. 2009), held that transporting drugs -- one of the acts prohibited by the Ohio statute -- does not qualify as drug trafficking activity under § 2L1.2. We disagree.

At issue in *Maroquin-Bran* was a conviction under a California statute that "prohibits two offenses: sale of marijuana and transportation of marijuana." *Maroquin-Bran*, 587 F.3d at 218. Pointing to a California case holding that a defendant could be convicted under the statute for transporting marijuana for personal use, *see People v. Rogers*, 486 P.2d 129 (Ca. 1971), we explained that a transportation conviction "may not" qualify as a drug trafficking offense because that conviction could be based on a defendant's mere possession of marijuana. *Maroquin-Bran*, 587 F.3d at 218; *see Rogers*, 486 P.2d at 132 ("Nor can we agree with defendant[] . . . that the offense of illegal transportation requires a specific intent to transport contraband for the purpose of sale or distribution, rather than personal use.").

*Maroquin-Bran* therefore did not hold that transportation of a controlled substance could *never* qualify as a drug trafficking offense; it simply held that a conviction under the particular California statute at issue was not categorically a drug trafficking offense because it could be based on an act of simple possession, rather than possession "with intent to manufacture, import, export, distribute, or dispense," as required by the Guidelines. U.S.S.G. § 2L1.2, cmt. n.1(B)(iv). Because the Ohio statute in this case requires that the defendant have knowledge that the controlled substance is intended for sale, the statute does not apply to simple possession. Nothing in *Maroquin-Bran* compels a different conclusion.

## II.

Accordingly, we agree with the district court that Walker's prior conviction under Ohio Rev. Code Ann. § 2925.03(A)(2) categorically qualifies as a "drug trafficking offense" as defined in U.S.S.G. § 2L1.2, cmt. n.1(B)(iv) (2015). Because the district court properly applied the 16-level enhancement, we affirm Walker's conviction and sentence.

AFFIRMED