RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0176p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DENNIS A. SMITH,

*Defendant-Appellant*.

No. 19-3236

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:18-cr-00370-1—John R. Adams, District Judge.

Decided and Filed: June 5, 2020

Before: BOGGS, GRIFFIN, and READLER, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Thomas W. Jakuc, St. Clair Shores, Michigan, for Appellant. Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

CHAD A. READLER, Circuit Judge. Dennis Smith was sentenced to 150 months in prison for distributing a controlled substance. On appeal, Smith argues that his sentence was flawed in two respects: one, that the First Step Act should have been applied to his sentence and two, that his prior state drug-trafficking conviction was not a predicate offense for purposes of the Sentencing Guidelines. Seeing no error in the district court's judgment, we **AFFIRM**.

## BACKGROUND

Dennis Smith was indicted on one count of knowingly and intentionally distributing a mixture of heroin, fentanyl, and carfentanil, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Following the indictment, the government filed a notice with the district court indicating that Smith was subject to an increased statutory maximum sentence under § 841(b)(1)(C) due to a prior state felony drug-trafficking offense. The next day, Smith pleaded guilty. In a Rule 11 plea agreement, Smith waived his right to appeal the conviction and sentence save for a few enumerated circumstances. Chief among them, Smith reserved the right to appeal the determination that he was a career offender.

Consistent with the plea agreement, the Probation Office, in the Presentence Investigation Report (PSR), indicated that Smith was a career offender based upon two prior state felony convictions, one for drug trafficking and another for five counts of aggravated robbery. Smith objected to the PSR, claiming that the First Step Act rendered his § 841(b)(1)(C) statutory enhancement invalid and that his state convictions for drug trafficking and robbery were no longer predicate offenses to determine his career-offender status. The Probation Office disagreed in both respects.

Smith asked to withdraw his guilty plea. As grounds for doing so, he again cited the First Step Act as well as his contention that his state aggravated-robbery conviction was not a crime of violence for determining career-offender status under the Guideline. Smith, however, did not raise his earlier objection that his state conviction for felony drug trafficking also was not a predicate offense for determining career-offender status. At a subsequent hearing, the district court rejected Smith's request to withdraw his plea, disagreeing with both his First Step Act and career-offender-status arguments. The district court proceeded to sentence Smith to a within-Guidelines 150-month sentence. Smith timely appealed.

## ANALYSIS

*In His Plea Agreement, Smith Waived His Argument Regarding The First Step Act.* "We review the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement *de novo*." *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005)

(citing *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005)).  And upon that de novo review, we see no reason that Smith's waiver of his appeal rights is not valid and binding.

"It is well settled that a defendant in a criminal case may waive any right . . . by means of a plea agreement."  *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004) (quoting *United States v. Fleming*, 239 F.3d 761, 763–64 (6th Cir. 2001)).  To be valid, however, the waiver must be both knowing and voluntary.  "The sine qua non of a valid waiver is that the defendant enter into the agreement knowingly and voluntarily."  *Fleming*, 239 F.3d at 764.  There is no dispute that Smith did so.  When Smith pleaded guilty, the district court carefully explained to him the ramifications of his waiver of his appeal rights, even pausing at one point to re-phrase the exceptions to Smith's waiver so that Smith could better understand them.  At the appropriate times, Smith indicated during the hearing that he understood and agreed to the waiver.  In these careful circumstances, we cannot say that Smith actions were not knowing and voluntary.  *See Calderon*, 388 F.3d at 200 (holding that a criminal defendant's waiver of appeal rights through a plea agreement was knowing and voluntary because the defendant testified at the plea hearing that he understood and agreed to its provisions).

Having established that Smith's waiver was valid, we turn to the breadth of his waiver.  As part of his plea, Smith waived all grounds for appeal save for five specific instances: 1) his sentence, if he was sentenced above the agreed-upon statutory maximum, 2) his sentence, if he was sentenced above the agreed-upon Guideline range, 3) his career-offender status, 4) ineffective counsel, and 5) prosecutorial abuse.  It follows that if the issue Smith raises today is not one of the five preserved in his plea agreement, he has waived his right to appeal that issue.

Arguments regarding the First Step Act's application to § 841(b)(1)(C) were not among the five issues Smith preserved for appeal.  The first was that Smith not be sentenced above the agreed-upon statutory maximum.  He was not—Smith was sentenced to serve 150 months in prison, well below the agreed-upon statutory maximum of 360 months.  The second was that Smith not be sentenced above the agreed-upon Guideline range.  Here too, his sentence did not exceed the stated limits—his 150-month sentence fell safely within the agreed-upon Guideline range of 130 to 162 months.  Nor does Smith's First Step Act argument satisfy any of the last

three grounds for appeal.  His argument does not impact his career-offender status, nor does it involve allegations of misconduct by either Smith's counsel or the government.  We thus see no basis to conclude that Smith's tailored plea agreement preserved for appeal his arguments regarding the First Step Act.  *See Calderon*, 388 F.3d at 199 (holding that the defendant waived his right to appeal an issue because his waiver of his appellate rights was conditioned only on the fact that he not be sentenced above the agreed-upon statutory maximum and he was not sentenced above that maximum).

To the extent this result strikes one as inequitable, it is perhaps a slight comfort to know that, even had Smith had not waived his First Step Act challenge to § 841(b)(1)(C), his argument would fail.  We recently held in *United States v. Wiseman* that while the First Step Act narrowed 21 U.S.C. §§ 841(b)(1)(A) and (B) by limiting their application to "serious" drug felonies (as opposed to mere felony drug offenses), the First Step Act did not modify § 841(b)(1)(C), the section at issue here.  932 F.3d 411, 417 (6th Cir. 2019) (rejecting application of First Step Act where the defendant was convicted under § 841(b)(1)(C)), *cert. denied*, 140 S. Ct. 1237 (2020).  Like Wiseman, Smith too was convicted under § 841(b)(1)(C).  So even if preserved, his argument is nonetheless foreclosed by precedent.  *Sykes v. Anderson*, 625 F.3d 294, 319 (6th Cir. 2010) (noting that a "published prior panel decision" is "controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision")  (citation omitted).

*Smith's Violation Of Ohio Revised Code § 2925.03(A)(2) Is A Controlled Substance Offense Under The Sentencing Guidelines.*  Ordinarily, we review whether the district court properly determined that a prior offense qualifies as a controlled-substance offense de novo. *United States v. Havis*, 927 F.3d 382, 384 (6th Cir. 2019) (en banc) (per curiam), *reconsideration denied*, 929 F.3d 317 (6th Cir. 2019).  There is some dispute here, however, whether Smith properly raised this issue below (as if he did not, his challenge would be subject to plain-error review, *see, e.g.*, *United States v. Simmons*, 587 F.3d 348, 355 (6th Cir. 2009)).  We need not belabor the point.  As in either instance, his claim fails.

To determine if Smith's prior state offense qualifies as a "controlled substance offense" for determining his career-offender status under the Sentencing Guidelines, U.S.S.G. § 4B1.2(b),

we employ what has come to be known as the "categorical approach." Following that approach, we compare the elements of Smith's prior state drug-trafficking offense to the elements of a controlled-substance offense as defined by § 4B1.2(b) of the Guidelines. *See United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006). If the elements of Smith's state offense are narrower than or coterminous with the definition of a "controlled substance offense" set forth in § 4B1.2(b), the offense qualifies as a predicate for § 4B1.1's career-offender enhancement. *Id.* at 322–23.

In employing this categorical approach, we typically are not permitted to look at the record to determine a defendant's actual criminal conduct. *Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016). Rather, we compare only the *elements* of the prior offense to § 4B1.2(b). *Id.* This becomes more challenging when the statute underlying the prior state conviction defines multiple offenses. In the parlance of the categorical approach, a statute of that ilk is deemed to be "divisible." When faced with a divisible statute, we apply a "modified categorical approach," which, in more plain English, means that we review documents such as indictments and jury instructions (known as *Shepard* documents, *see Shepard v. United States*, 544 U.S. 13, 16 (2005)) to determine which particular offense the defendant was convicted of and, in turn, whether that offense qualifies under § 4B1.2(b). *United States v. Cavazos*, 950 F.3d 329, 335 (6th Cir. 2020) (citing *Descamps v. United States*, 570 U.S. 254, 257 (2013)).

1. With these principles in mind, we start by determining whether the statute Smith was charged with violating—Ohio Revised Code § 2925.03(A)(2)—is divisible. A criminal statute that lists alternative ways an offense may be committed is divisible if those alternatives constitute separate offenses, but not if they are simply "alternative means" of committing the same offense. *Cavazos*, 950 F.3d at 335 (citing *Mathis*, 136 S. Ct. at 2254–56). Section 2925.03(A)(2) prohibits a person from knowingly "prepar[ing] for shipment, ship[ping], transport[ing], deliver[ing], prepar[ing] for distribution, or distribut[ing] a controlled substance" when the person "knows or has reasonable cause to believe that the controlled substance . . . is intended for sale or resale by the [person] or another person." Given the alternative ways in which the statute may be violated (e.g., "ship[ping], transport[ing], deliver[ing]"), we must

determine whether these many alternatives constitute separate offenses or instead are different means of committing the same drug-trafficking offense.

In determining whether § 2925.03(A)(2) lists alternative offenses or alternative means, our first stop is the Ohio courts. For if the state courts "definitively answer whether a statute is divisible, we need only follow what they say." *Cavazos*, 950 F.3d at 335 (quoting *Mathis*, 136 S. Ct. at 2256) (internal quotation marks and brackets omitted). But that inquiry leaves the question arguably unanswered. Smith cites no Ohio decision that speaks to the divisibility of § 2925.03(A)(2). We note that a sister circuit has read a decision from the Ohio Supreme Court to suggest that § 2925.03(A)(2) is indivisible. *See United States v. Walker*, 858 F.3d 196, 200 n.3 (4th Cir. 2017). *Walker* cites *State v. Cabrales*, 886 N.E.2d 181, 189 (Ohio 2008), for the proposition that § 2925.03(A)(2) appears to list "various means" in which a drug-trafficking offense can occur, meaning the "statute is *not* divisible." 858 F.3d at 200 n.3.

*Walker* notwithstanding, one might fairly debate whether *Cabrales* definitively settles the issue. But application of other interpretive tools identified in *Mathis* leads to the same conclusion. In the absence of a definitive state court decision regarding divisibility, we look at the statute ourselves. *See Mathis*, 136 S. Ct. at 2256. If a statute on its face resolves the question, our work is relatively easy. A statute, for example, may provide different penalties depending upon which statutory alternative a defendant violates. That type of statutory language is a strong indicator the alternatives constitute different offenses, meaning the statute is divisible. *Id.* (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). On the other hand, where a statute merely gives "illustrative examples" of how an offense may be committed, we deem the statute indivisible because the provisions are "alternative means" of committing a single offense. *Id.* (citations omitted). And if a state legislature seeks to make a court's interpretative task even simpler, it may explicitly distinguish between the elements and means of each offense—that is, between what is required for a conviction and the different ways an offense may be committed. *Id.* (citation omitted).

Utilizing these tools, we conclude, as did *Walker*, that § 2925.03(A)(2) is not divisible. While the statute neither specifies the listed alternatives as "illustrative examples" of how the offense may be committed nor explicitly identifies those alternatives as elements or means,

§ 2925.03's penalty provisions shed light on the indivisibility question. A violation of § 2925.03(A)(2) renders one guilty of violating some subsection of § 2925.03(C). Section (C), in turn, lays out the various felony levels and penalties for violating section (A)(2). In so doing, § 2925.03(C) makes no distinction based upon which statutory alternatives in § 2925.03(A)(2) a defendant employs in committing the trafficking offense. Instead, § 2925.03(C) sets the felony level and penalty based upon a variety of factors, including the amount and type of drugs involved and whether the drug trafficking occurred in the vicinity of a juvenile or a school. The penalty for violating § 2925.03(A)(2), in other words, does not differ based upon whether the defendant prepared to ship, shipped, transported, delivered, prepared to distribute, or distributed a controlled substance, a firm indicator the statute defines a single offense.

To the extent there is any remaining ambiguity as to § 2925.03(A)(2)'s indivisibility, a "peek" at the record of Smith's prior conviction confirms that conclusion. *Mathis*, 136 S. Ct. at 2256 (citation omitted). If an indictment simply "reiterate[es] all the terms" of the statute, "[t]hat is as clear an indication as any that each alternative is only a possible means of commission." *Id.* at 2257. Here, the record speaks clearly. Smith's indictment charges him with "knowingly prepar[ing] for shipment, ship[ping], transport[ing], deliver[ing], prepar[ing] for distribution or distribut[ing]" controlled substances. The indictment, in other words, simply "reiterate[es]" all terms of the statute—a clear indication, following *Mathis*, that preparing to ship, shipping, transporting, delivering, preparing for distribution or distributing are each "alternative means" of committing the same offense, not alternative offenses. Adding all of these hints together, we conclude that § 2925.03(A)(2) amounts to an indivisible statute.

2. Having concluded that § 2925.03(A)(2) is indivisible, we apply the categorical approach, and thus compare the statute's elements to offenses found in § 4B1.2(b). *Galloway*, 439 F.3d at 322. Turning to those elements, § 2925.03(A)(2) has three: the offender 1) "knowingly" 2) "prepare[s] for shipment, ship[s], transport[s], deliver[s], prepare[s] for distribution or distribute[s]" a controlled substance, and (3) "knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." *See State v. Williams*, 664 N.E.2d 576, 580 (Ohio Ct. App. 1995).

In view of these three elements, § 2925.03(A)(2) falls safely within the Guideline's contours. The first element confirms that the offender's conduct must be knowing. The second and third elements confirm that the conduct at issue is either possession with intent to distribute or distribution. And the third element acts as a safeguard by ensuring that mere possession is not prohibited by the statute. As the language there instructs, the offender must have some degree of knowledge that either he or someone whom possession is transferred to will sell the drug.

In reaching this conclusion, we do not write on a blank slate. The Ohio Supreme Court has held that a violation of § 2925.03(A)(2)—by whatever means—inherently involves possession of a controlled substance. *Cabrales*, 886 N.E.2d at 188. Consistent with this reading, in *United States v. Wright*, we read the alternatives in § 2925.03(A)(2) to constitute conduct that is "no less than possession of a controlled substance with an intent to distribute it." 43 F. App'x 848, 853 (6th Cir. 2002). Thus, the possession-with-intent-to-distribute offense falls safely within the confines of § 4B1.2(b), which defines a "controlled substance offense" as, among other things, "possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." *See also United States v. Robinson*, 333 F. App'x 33, 36 (6th Cir. 2009) (citing *Wright* for the proposition that § 2925.03(A)(2) describes a possession-with-intent-to-distribute offense).

Smith sees things differently. To his mind, the knowledge aspect of § 2925.03(A)(2)'s third element pushes its scope beyond § 4B1.2(b)'s parameters. The third element contains a component that the offender "know" or have "reasonable cause to believe" that the drug is "intended" for sale or resale. Smith contends that the "reasonable cause to believe" provision falls outside § 4B1.2(b)'s possession-with-intent-to-distribute requirement, which Smith contends has an actual-knowledge element. But there are at least two flaws with this argument. First, even assuming for purposes of argument that § 4B1.2(b) requires actual knowledge, § 2925.03(A)(2) passes muster. Federal and Ohio courts have consistently held that "reasonable cause to believe" is a type of actual knowledge, sufficient for criminal intent. *See, e.g.*, *United States v. Sdoulam*, 398 F.3d 981, 987–88 (8th Cir. 2005) (holding "reasonable cause to believe" sufficed for "specific intent" required to convict of conspiracy); *United States v. Saffo*, 227 F.3d 1260, 1268–69 (10th Cir. 2000) (holding the "know or have reasonable cause to believe"

standard sufficed for "guilty mind" or "guilty knowledge" requirement for imposing criminal liability, and was "akin to actual knowledge"); *United States v. Green*, 779 F.2d 1313, 1318–19 (7th Cir. 1985) (rejecting the argument that "knowing or having reasonable cause to believe" sets up a standard of negligence or recklessness different from knowledge); *State v. Miller*, No. 82CA24, 1984 WL 4270, at \*2–3 (Ohio Ct. App. Mar. 6, 1984) ("having reasonable cause to believe" is a "refinement on the knowledge state of culpability" in state law, and is therefore a type of intent).

Likewise, a person who *knowingly* prepares to ship, ships, transports, delivers, prepares for distribution or distributes to another person, must, by definition, knowingly possess the drug with an intent to distribute it.  That the offender must also know or have reasonable cause to believe the drug is intended for sale or resale does not in any way undermine the fact the offender has already both possessed a drug with an intent to distribute and transmitted the drug to the recipient.  *See United States v. Miles*, 266 F. App'x 534, 536 (9th Cir. 2008) ("The 'reasonable cause to believe' language from [§ 2925.03(A)(2)] only relates to the defendant's knowledge of a third-party's intent to sell . . . and does not impermissibly lower the standard of intent necessary for conviction to ship, transport, deliver, etc.").  In the situation where the offender prepares to ship, ships, transports, delivers, prepares for distribution, or distributes with knowledge that he intends to sell the drug himself, even Smith does not contest that this conduct qualifies as possession with intent to distribute.  *See id*. at 536 (explaining that § 2925.03(A)(2) criminalizes "mere" transport only when the offender also had knowledge that the drug is intended for sale); *see also State v. Gates*, No. 78120, 2001 WL 534163, at \*11 (Ohio Ct. App. May 17, 2001) (holding that the "reasonable cause to believe" language does not apply to the offender's knowledge of his own intention).  In sum, in all situations prohibited by § 2925.03(A)(2), the offender knowingly possesses a drug with the intent to distribute it.

Equally compelling is the alternative reasoning developed by our sister circuits:  that § 2925.03(A)(2) describes distribution of controlled substances, one of the other enumerated controlled-substance offenses that serves as the basis for an enhancement under § 4B1.2(b).  *See Walker*, 858 F.3d at 200 n.4, 201; *United States v. Fuentes-Oyervides*, 541 F.3d 286, 289 (5th Cir. 2008); *United States v. Karam*, 496 F.3d 1157, 1168 (10th Cir. 2007); *Miles*, 266 F. App'x

at 536.  Section § 4B1.2(b) does not require a particular mental state for distribution offenses, as it does for possession with intent to distribute:  "The term 'controlled substance offense' means an offense under federal or state law . . . that prohibits the . . . distribution . . . of a controlled substance."  U.S.S.G. § 4B1.2(b).  Smith's "state of mind" argument thus has no bearing under this reading of § 2925.03(A)(2).  So whether § 2925.03(A)(2) describes possession with an intent to distribute or distribution itself, the conclusion is the same—§ 2925.03(A)(2) is a predicate "controlled substance offense" for purposes of § 4B1.2(b).

3.  Smith responds that this consistent reading of § 2925.03(A)(2) nonetheless must be reconsidered in light of our recent decision in *Havis*.  927 F.3d at 384.  True, as Smith notes, our decisions addressing § 2925.03(A)(2) and its relation to § 4B1.2(b) all pre-date *Havis*.  And in *Havis*, we reversed earlier decisions and held that § 4B1.2(b) does not include attempt offenses. *Id.* at 387 (holding that because the commentary adding attempt crimes to the Guidelines contradicts the text of the Guidelines, that commentary "deserves no deference").  Seizing on that distinction, Smith asserts that because § 2925.03(A)(2) also reaches the act of "preparation," by virtue of *Havis* that means that, at the very least, part of the statute no longer qualifies as a predicate offense under § 4B1.2(b).

Smith's argument focuses singularly on § 2925.03(A)(2)'s use of the term "prepare." Noting language in our Circuit's pattern jury instruction that "[m]erely preparing to commit a crime is not a substantial step" for the purposes of attempt, Smith contends that "mere preparation" must precede attempt.  It follows, says Smith, that if attempt is not a predicate offense under § 4B1.2(b), logically, "mere preparation"—which is less than an attempt—cannot be a predicate offense either.

Smith confuses the ordinary meaning of "prepare" with its more specialized meaning in the common law of attempt.  In the context of § 2925.03(A)(2), to "prepare for shipment" or to "prepare for distribution" means the defendant was in the process of distributing drugs, for example, having packed drugs in baggies to be sold.  *See State v. Gies*, ---N.E.3d----, 2019 WL 5208238, at *6 (Ohio Ct. App. Oct. 16, 2019) (holding that a bag of methamphetamine along with "other large bags of narcotics all similarly packaged, . . . digital scale, . . . notebook listing the price for a pound of methamphetamine that correlated with the amount of cash (over $4,500)

found on [the defendant] during arrest, and stacks of additional empty baggies" was sufficient evidence the defendant "prepared the amphetamine tablets with intent to sell them"), *petition for cert. filed*, No. 19-8423 (U.S. Apr. 30, 2019); *State v. Renner*, No. CA2002–08–033, 2003 WL 22887991, at *4 (Ohio Ct. App. Dec. 8, 2003) (holding that a defendant's possession of "five plastic bags, each containing methamphetamine . . . along with other drugs and drug paraphernalia" was sufficient evidence to support a conviction for "prepar[ing] to deliver" drugs); *State v. Thompson*, No. 13-17-26, 2018 WL 985966, at *17 (Ohio Ct. App. Feb. 20, 2018) (collecting cases for the proposition that the combination of drugs, large amounts of small denomination currency, scales, and pinch baggies is "indicative" that the defendant "was preparing . . . for distribution"); *see also State v. Collins*, No. 95422, 2011 WL 4389539, at *3 (Ohio Ct. App. Sept. 21, 2011) (holding that preparation of shipment in § 2925.03(A)(2) means more than mere possession; the offender must "actually prepare[] drugs for shipment, or ship[] a drug").

By comparison, in the special context of the law of attempt, it is a black-letter rule that "mere preparation" does not satisfy the elements of an "attempt" crime. Instead, a defendant must take a "substantial step" towards the ultimate crime. 22 C.J.S. *Criminal Law: Substantive Principles* § 159 (2020) ("To prove an attempt crime, the government must show that a defendant took a substantial step towards commission of the ultimate crime, and that the step was more than mere preparation."). Yes, § 2925.03(A)(2) does prohibit "prepar[ing] for distribution" and "prepar[ing] for shipment," in addition to the shipment, transport, delivery, or distribution of controlled substances. But we have not read the term "prepare" in § 2925.03(A)(2) to mean an incomplete attempt. *See Wright*, 43 F. App'x at 853; *Robinson*, 333 F. App'x at 36. To the contrary, "prepar[ing] for shipment, ship[ping], [or] transport[ing]" a controlled substance "intended for sale or resale" is, at the very least, "no less than possession of a controlled substance with intent to distribute it." *Wright*, 43 F. App'x at 853 (alterations in original). While *Wright* was decided without the benefit of *Havis*, Smith offers no compelling reason why we should read "prepare" in § 2925.03(A)(2) any differently today.

Confirming this conclusion is the treatment afforded § 2925.03(A)(2) by Ohio courts. Those courts have read the "prepare" provision as a supplement or alternative to indictments for

distributing controlled substances, as opposed to conduct that is so attenuated from the completion of drug trafficking that the conduct would not even be an attempt. *See State v. Carpenter*, 128 N.E. 3d 857, 874 (Ohio Ct. App. 2019) (collecting cases holding that the presence of illegal drugs, along with plastic baggies, digital scales, and large sums of money, support a defendant's jury conviction for having "knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution or distributed the controlled substance"); *State v. Gilcreast*, No. 21533, 2003 WL 23094873, at *3 (Ohio Ct. App. Dec. 31, 2003) ("For Defendant to be convicted of trafficking in drugs, the State was required to prove that Defendant knowingly prepared for shipment or prepared for distribution a controlled substance . . . ."). To the same end, Ohio courts have found that a defendant convicted of violating § 2925.03(A)(2) has also implicitly committed the lesser offense of possession, as the offender must possess the controlled substance "to ship a controlled substance, deliver it, distribute it, or prepare it for shipping, etc." *State v. Walker*, 135 N.E.3d 444, 458 (Ohio Ct. App. 2019) (quoting *Cabrales*, 886 N.E.2d at 188). The possession of a controlled substance, which is necessary for a conviction for "preparing" to distribute, seems to our eye even beyond the substantial step necessary for attempt, and thus beyond the "mere preparation" meaning Smith assigns to § 2925.03(A)(2). *State v. Group*, 781 N.E.2d 980, 995 (Ohio 2002) (explaining that "attempt" for the purposes of Ohio law requires a substantial step). And it would be odd to think that the Ohio General Assembly, in § 2925.03(A)(2), prohibited "mere preparation" to traffic in drugs, as well as the completed crime of drug trafficking, but not the step in-between—attempt—which all seem to agree the statute does not address. *Cf. State v. Guzman*, No. 02AP-1440, 2003 WL 22099257, at *6 (Ohio Ct. App. Sept. 11, 2003) (holding that attempted possession and § 2925.03(A)(2) are distinct crimes, because "[i]t is possible to attempt to possess cocaine without preparing it for shipment, shipping, transporting or delivering or preparing it for distribution or distributing it"). Rather than follow Smith's contorted interpretation, we adhere to the ordinary interpretation given the statute by the Ohio courts.

## CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.