NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0528n.06

Case No. 23-3619

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| TERRY WILLIS, | ) | OHIO |
|     Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

FILED
Dec 18, 2024
KELLY L. STEPHENS, Clerk

Before: KETHLEDGE, LARSEN, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Terry Willis pleaded guilty to possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug-trafficking crime, and being a felon in possession of a firearm. The district court sentenced him to 210 months' imprisonment. On appeal, Willis challenges his convictions and sentence. We affirm.

## I.

On May 22, 2019, a Cincinnati police officer initiated a routine traffic stop of a car with a missing front license plate and heavily tinted windows. The driver, Terry Willis, turned into a nearby parking lot and attempted to flee on foot, but he was caught and arrested.

Officers then searched Willis and his vehicle. They found a loaded semiautomatic firearm in his waistband. Officers also found approximately 25 grams of cocaine base, 2 small bags of marijuana, and $1,639 in cash on his person. A criminal background check revealed that Willis

had prior felony convictions related to drug trafficking. Throughout the interaction, all officers were equipped with body-worn cameras.

A grand jury indicted Willis for: (1) possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (3) possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). A few months later, in November 2019, the government offered Willis a plea deal. Under the proposed terms, the government would recommend a sentence within the advisory Sentencing Guidelines range and a three-point reduction for acceptance of responsibility if Willis pleaded guilty. Willis did not accept the offer, and the parties prepared for trial.

In October 2020, Willis told the district court he wanted to change his plea to guilty. But before the change-of-plea hearing on November 12, 2020, he decided against it because he no longer believed his attorney had his best interests in mind. In May 2021, Willis again told the district court that he would plead guilty. But at the change-of-plea hearing, Willis instead requested a continuance because he was "uncomfortable entering a plea without a more fulsome discussion" with his attorney about a pretrial motion that the government filed the day before. R. 119, PageID 1086–87. He also wanted the continuance so that an expert witness could analyze the bodycam footage of his arrest, which he believed might have been altered in some way. The court set a trial date for three months later.

The district court held the final pretrial conference on August 18, 2021. There, the government notified the court that Willis had rejected the plea offer. The court asked Willis to confirm whether he had received and rejected the offer, and Willis responded ambiguously. The court asked for clarification and rephrased the question twice, but Willis continued to equivocate.

Seeking a clearer answer for the record, the government "propose[d] that the [c]ourt ask Mr. Willis if that offer were made to him today, right now, if he would accept it."  R. 80, PageID 471.  If he said no, the point would be moot.  Following the government's suggestion, the court asked:

> So, Mr. Willis, if the government were to convey to you today a plea offer, pursuant to which you would plead guilty to the three counts in the indictment; and, in exchange, the government would recommend that you receive a guideline range sentence, and that your guidelines would be calculated with three points off for acceptance of responsibility, would you accept that plea offer?

*Id.* at 472.  Willis stated that he would not accept that offer.  The court found this exchange sufficient to create a record of any offers extended and rejected.

The court then discussed trial logistics and evidentiary issues with the parties.  During an exchange about the trial schedule, the court asked Willis whether he wanted to go forward with the trial on the scheduled date.  Although the court was asking if he had concerns about that particular date, Willis apparently interpreted the question to be about whether he wanted to move forward with a trial at all.  He told the court that at some point since the previous plea discussion that day, he had a conversation with his attorney about sentencing exposure that "kind of freaked [him] out" and caused him to reassess the risk of going to trial.  *Id.* at 542.  The court asked Willis whether he still intended to proceed to trial and instructed him to answer without sharing the specifics of his conversation with his attorney.

Recognizing the complexity of facilitating such a discussion with both parties present, the government offered to exit the courtroom.  After the government left, the district court commenced an ex parte discussion with Willis and his attorney.  The court asked Willis's counsel whether he had sufficient opportunity to discuss the appropriate path forward with Willis, and he said he did.  Willis interjected to say that he did not think he should plead guilty because his previous counsel advised him that the initial plea offer was not favorable.  The court responded that it "[could not]

play any role in plea negotiations" and was "not going to advise [Willis] as to whether it's a favorable or an unfavorable deal." R. 79, Page ID 453. It clarified that "[t]he only thing that [it] can control at this juncture is whether we go to trial on Tuesday or not." *Id.* To aid his decision, Willis asked the court questions about the government's Guidelines calculations. The court encouraged Willis to discuss the calculations with his attorney. After privately conferring, Willis's counsel informed the court that Willis wished to change his plea to guilty on all three charges, and Willis raised additional questions about the Guidelines calculations. Recognizing that his "hands [were] a little tied," the district judge encouraged Willis's attorney to talk directly to the government's counsel and called a recess. *Id.* at 457.

By the time the court reconvened, the parties had reached an agreement on the terms of a proposed plea agreement. Willis's attorney announced that Willis wished to plead guilty with the understanding that the government now offered to recommend only two points for acceptance of responsibility rather than three as initially proposed. Willis confirmed that his attorney accurately represented his intent, and the court began a change-of-plea hearing. During the hearing, Willis averred that he had read and discussed the indictment with his attorney, understood the charges against him and his constitutional rights, and had not been subjected to threats or force causing him to plead guilty. Finding that Willis understood the nature of the proceedings and was acting voluntarily, the district court accepted his change of plea.

On September 7, 2021, Willis's attorney moved to withdraw as counsel based on diminishing communication and trust. During the October 5 hearing on the motion, which the district court denied without prejudice, Willis informed the district court that he wanted to withdraw his guilty plea. He apparently told his attorney of his desire to withdraw his guilty plea

just days after the change-of-plea hearing, which likely led to his attorney's motion to withdraw as counsel.

On October 25, 2021, Willis filed a motion to withdraw his guilty plea. The motion indicated that Willis sought to withdraw his guilty plea because he had since received new information in a written summary from his video analysis expert. He claimed that he would not have pleaded guilty had he first received the summary.

Willis, through new counsel, later supplemented his motion to withdraw his guilty plea. In the supplemental motion, Willis elaborated on how the expert summary affected his plea decision. Willis claimed that before the change-of-plea hearing, his previous attorney told him that the expert had completed the video analysis and found no irregularities. In truth, the expert had analyzed only one officer's bodycam video but did not review the other officers' footage. Willis did not discover this until he received the written summary. The supplemental motion also raised a new argument—that the district court impermissibly participated in the plea negotiations at the final pretrial hearing, which pressured Willis into entering a guilty plea.

The court analyzed factors relevant to determining whether to permit plea withdrawals and denied Willis's motion.

The case proceeded to sentencing. Willis's advisory Guidelines range was 360 months to life imprisonment because he was considered a career offender. The district court imposed a below-Guidelines sentence of 210 months' imprisonment.

Willis timely appealed. He argues that his convictions should be reversed because the district court improperly influenced him to enter a guilty plea and denied his request to withdraw his plea. He also contends that his sentence is procedurally and substantively unreasonable.

**II.**

Willis seeks reversal of his convictions based on alleged improprieties surrounding his guilty plea. He alleges that the district court violated at least two provisions of Federal Rule of Criminal Procedure 11 by participating in plea negotiations and accepting an involuntary plea. We disagree.

**A.**

Willis argues that the district court improperly participated in plea negotiations, in violation of Federal Rule of Criminal Procedure 11(c)(1). That rule governs the procedure for plea agreements. It permits the government's attorney and the defendant's attorney to "discuss and reach a plea agreement." Fed. R. Crim. P. 11(c)(1). And it prohibits the district court from participating in plea negotiations between the government and the defendant. *Id.*

"Rule 11 absolutely prohibits judicial involvement of any form in plea negotiations." *In re United States*, 32 F.4th 584, 593 (6th Cir. 2022) (citation omitted). We have indicated that Rule 11 concerns arise when the court initiates substantive discussions, comments on the defendant's possible guilt or innocence, evaluates the defendant's case or sentencing exposure, suggests that the parties add a particular term to the plea agreement, encourages the parties to keep the court's preferences in mind during negotiations, endeavors to facilitate a plea, or indicates hypothetical terms the court would or would not accept. *Id.* at 592–94. We have also cautioned against district courts' presence while the parties negotiate specific terms of a plea agreement, though that alone does not constitute participation. *United States v. Ushery*, 785 F.3d 210, 220 (6th Cir. 2015).

The district court did not involve itself in the parties' plea negotiations. The court expressed no substantive view regarding Willis's case or exposure. It did not facilitate discussions

aimed at reaching an agreement. And it did not make statements that could influence the parties' priorities during the negotiation process.

Rather, during a pretrial conference, the court attempted to ascertain whether Willis had received and rejected any plea offers from the government, as the parties were scheduled to proceed to a jury trial. The Supreme Court has authorized trial courts to "adopt some measures to help ensure against late, frivolous, or fabricated claims [of ineffective assistance of counsel] after" a defendant rejects an initial plea offer. *Missouri v. Frye*, 566 U.S. 134, 146 (2012); *see also Lafler v. Cooper*, 566 U.S. 156, 172 (2012). So, trial courts often hold "*Lafler*/*Frye* hearings to establish a record about whether defense counsel effectively conveyed a plea offer to [the] defendant[]," *United States v. Kearn*, 54 F.4th 1225, 1227 n.2 (10th Cir. 2022), thereby ensuring that the defendant "fully underst[ands] the terms of the plea agreement that he [i]s rejecting," *United States v. Albarran*, 943 F.3d 106, 113 (2d Cir. 2019).

The district court in this case did exactly that. At the start of the pretrial conference, the court stated, "I think we should probably do a *Lafler* hearing at this point to get whatever the status of the plea negotiations is on the record." R. 80, PageID 461. After the government indicated that there was "no plea offer on the table," the court asked Willis whether he had rejected the government's plea offer. *Id.* at 465. Willis replied, "Not in its entirety[.]" *Id.* The court sought clarification from Willis but still did not receive a clear response. It explained that "all the [c]ourt's trying to do . . . is create a record with regard to offers that were extended to you." *Id.* at 467. After several unsuccessful attempts, the government proposed an alternative way to resolve the issue: if the district court could hypothetically ascertain that Willis would not accept the original offer in the present, there would be no need to establish whether Willis had actually rejected it because the issue would be moot.

The district court tried that approach.  In doing so, the court repeatedly made clear that it was asking about a hypothetical plea offer.  For example, after summarizing the terms directly from an email in which the government had extended its plea offer, the court explained that it had just described "what the plea deal *was***."**  *Id.* at 474 (emphasis added).  The court again clarified that the purpose of engaging in this discussion was to determine whether Willis would accept that offer "*if* that offer were made to [him] today."  *Id.* at 475 (emphasis added).  Willis answered "[n]o," and both the government and Willis's counsel confirmed they understood his answer to mean "that even if the offer had not lapsed or been rejected, that even if that offer were available to Mr. Willis today, Mr. Willis would reject that offer."  *Id.* at 476.  From that line of questioning, the court concluded, "I think that's as close as we're going to get to a *Lafler* hearing on this issue," and ended its inquiry into whether Willis had rejected the government's plea offer because the issue was moot.  *Id.*

Throughout its exchanges with Willis about the plea offer, the court was simply ensuring that Willis understood the offer's terms, in keeping with *Frye* and *Lafler*.  The court did not extend, comment on, or encourage an actual or potential plea offer.  In fact, it did not even insinuate any viewpoint on the hypothetical plea offer.  Such conduct does not violate Rule 11(c)(1).

**B.**

Willis also argues that the district court's acceptance of his guilty plea violated Federal Rule of Criminal Procedure 11(b)(2).  This rule requires the district court to "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)."  Fed. R. Crim. P. 11(b)(2).

Specifically, Willis contends that the district court should have known his plea was involuntary because during the pretrial conference that preceded the change-of-plea hearing, Willis

indicated that he could not make a knowing plea decision without reviewing his expert's full report. But he later chose to plead guilty rather than wait for the report and explicitly stated that he needed no other information before proceeding with the change-of-plea hearing. Sure, a drawback of that choice was that Willis would not be able to first read the report before pleading guilty. On the other hand, pleading guilty allowed Willis to take advantage of the government's new plea offer. That his decision involved an inopportune tradeoff does not make it involuntary. *See United States v. Palomares*, 12 F. App'x 213, 217 (6th Cir. 2001) ("[T]he mere fact that the defendant 'did not correctly assess every relevant factor entering into his decision' does not mean that the decision was not intelligent." (quoting *Brady v. United States*, 397 U.S. 742, 757 (1970))).

**III.**

Because we find that the district court properly accepted Willis's guilty plea, we address his argument that he should have been allowed to withdraw it. "A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Willis moved to withdraw his guilty plea prior to sentencing. We review the district court's denial of his motion for an abuse of discretion. *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012).

Willis bears the burden of demonstrating that grounds exist for withdrawing his guilty plea. *See United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007). Courts consider several factors in determining whether a defendant has met his burden. They include:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the

> defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds by guidelines amendment as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000). These factors are a "general, non-exclusive list and no one factor is controlling." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996).

Taking into account the *Bashara* factors, the district court found that Willis had not shown an entitlement to withdraw his guilty plea. The district court did not abuse its discretion in so finding.

*Length of delay.* Willis moved to withdraw his guilty plea 68 days after his guilty plea. This period of delay would generally weigh against a defendant. *See United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (affirming denial of motion to withdraw guilty plea where 67 days elapsed between plea and motion to withdraw plea). But the district court weighed this factor in Willis's favor because he provided a colorable reason for the delay in moving to withdraw his guilty plea, which we address below.

*Reason for delay.* Willis claims that he told his attorney he wanted to withdraw his guilty plea eight days after the guilty plea. Willis communicated his desire to withdraw his guilty plea to the district court 48 days after the plea. The district court attributed the filing delay to Willis's attorney attempting to withdraw as counsel. Thus, Willis had a valid reason for not moving to withdraw sooner than he did. The first two *Bashara* factors weigh in Willis's favor.

*Asserting or maintaining innocence.* During his change-of-plea hearing, Willis admitted to the facts underlying his charges. Those admissions, made under oath at a plea hearing that followed proper Rule 11 procedures, weigh against Willis. *See United States v. Ellis*, 470 F.3d

275, 280 (6th Cir. 2006) ("When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." (quotation omitted)). And prior to the change-of-plea hearing, Willis told the district court on two previous occasions that he wanted to change his plea to guilty.

*Circumstances underlying guilty plea.* Willis decided to plead guilty after discussing his sentencing exposure with his attorney. At the change-of-plea hearing, Willis "clearly stated to the court that he understood the charges against him, understood his rights, had not been pressured, and was satisfied with the representation he received from his attorney." *Baez*, 87 F.3d at 809. As the district court explained, "[i]n pleading guilty, Willis understood what he was doing and did it anyway." R. 95, PageID 768. Therefore, this factor weighs against Willis. *See Dixon*, 479 F.3d at 437.

*Willis's nature and background.* The district court found that this factor did not support withdrawal because, although Willis bore the burden, he offered "virtually no discussion about his nature or background." R. 95, PageID 768. On appeal, Willis argues that his lack of education and competency evaluations indicate that he should have been allowed to withdraw his guilty plea. But Willis has obtained a GED, which suggests that he has the equivalent of a high-school education. And the district court twice found Willis competent to stand trial after conducting competency hearings. This factor weighs against Willis.

*Willis's criminal history.* Willis is well-acquainted with the criminal justice system. Although this is his first *federal* criminal case, he has approximately fifty state criminal convictions across four decades. This "significant criminal justice experience" weighs against Willis. *See id.*

*Potential prejudice to the government.* Because Willis failed to establish a fair and just reason for withdrawing his guilty plea, the government did not need to establish prejudice. *See Ellis*, 470 F.3d at 286.

\*     \*     \*

The district court did not abuse its discretion in finding that the *Bashara* factors do not weigh in favor of allowing Willis to withdraw his guilty plea.

## IV.

Willis lodges two challenges to his sentence. First, he asserts that the district court improperly applied the career-offender guideline. Second, he claims that his sentence is substantively unreasonable. We reject both challenges.

## A.

Willis argues that the district court should not have sentenced him as a career offender because he has not committed a predicate "controlled substance offense" under U.S.S.G. § 4B1.2(b). We review de novo whether a prior offense qualifies as a controlled substance offense under § 4B1.2(b). *United States v. Jones*, 81 F.4th 591, 597 (6th Cir. 2023).

Willis's predicate offenses for application of the career-offender guidelines were convictions for violating Ohio Revised Code § 2925.03(A)(2). We have previously held that a conviction under § 2925.03(A)(2) is a controlled substance offense under the Guidelines. *United States v. Smith*, 960 F.3d 883, 889 (6th Cir. 2020). Our holding in *Smith* forecloses Willis's challenge to the career-offender enhancement. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

**B.**

Willis argues that his 210-month sentence was substantively unreasonable. "We review the substantive reasonableness of a sentence for abuse of discretion[.]" *United States v. Sexton*, 889 F.3d 262, 265 (6th Cir. 2018) (quotation omitted). A sentence is substantively unreasonable if the district "court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). A rebuttable presumption of reasonableness applies to sentences within the advisory Guidelines range. *United States v. Smith*, 881 F.3d 954, 960 (6th Cir. 2018). The presumption is "even more demanding" when a defendant challenges a below-Guidelines sentence. *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

Although the district court imposed a below-Guidelines sentence, Willis argues that the court did not properly weigh the § 3553(a) factors. We disagree. In sentencing Willis, the district court noted the riskiness of Willis's conduct as "he led officers on a pointless chase" involving the dangerous combination of guns and drugs. R. 111, PageID 987. It considered that Willis, a felon, carried a firearm in violation of an express prohibition against him having one. And it considered his "extremely long line of criminal convictions" related to his "ongoing interaction with trading in controlled substances," some of which also involved firearms, high-speed chases, and other high-risk activities. *Id.* at 989–90. The court also acknowledged the mitigating factors in Willis's favor, including that Willis endured childhood abuse and suffers long-term trauma from it, that he obtained his GED and had some record of work, that any sentence imposed would affect his four children, and that the government had recommended a below-Guidelines sentence of 240 months.

Willis essentially "asks us to balance the factors *differently* than the district court did," *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006), but our deferential standard of review bars

us from doing that.  Thus, Willis has failed to rebut the presumption of reasonableness for his below-Guidelines sentence.  *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc).

**V.**

For these reasons, we **AFFIRM** the district court's judgment.